RAYMOND MAXWELL v. THE WAYNE NATIONAL BANK et al.

(Filed 6 March, 1918.)

1. **Reference—Appeal and Error.**

   The facts found in the report of the referee, accepted and approved by the judge, will not be disturbed on appeal when based on sufficient legal evidence.

2. **Equity—Deeds and Conveyances—Reformation—Mutual Mistake.**

   Equity will correct an error in the description in a deed to lands which, by the mutual mistake of the parties, includes a greater acreage than the grantor intended to sell or the vendee contemplated in his purchase, when the proof is clear, convincing and satisfactory.

3. **Same—Intent.**

   The intent of the vendor and purchaser of lands is essential in passing upon the question of mistake in the description of the lands embraced in the boundaries given in the deed.

4. **Equity—Deeds and Conveyances—Reformation—Mutual Mistake—Breach of Warranty.**

   When the reformation of a deed is sought for mutual mistake in the description given therein of the boundaries of the land conveyed, the questions of breach of covenant and warranty in the deed have no application.

CIVIL ACTION, pending in the Superior Court of WAYNE, heard out of term, 29 December, 1917, by consent, by *Allen, J.,* upon exceptions to report of referee filed by plaintiff.

His Honor overruled the exceptions and adopted the findings of the referee, both of law and fact, and confirmed his report. Plaintiff excepted and appealed.

*Henry A. Grady, Robinson & Son, and W. T. Dortch for plaintiff. Langston, Allen & Taylor and Dickinson & Land for defendants.*

BROWN, J. This action is brought to recover damages for a breach of covenant of warranty in sale of land and to have the damages assessed credited upon the purchase money notes, and in meantime to restraining the exercise of the power of sale in the deed in trust.

It appears that G. M. Maxwell, acting for himself and his son, the plaintiff, purchased from the Goldsboro and Seven Springs Securities Company a large tract of land known as the Seven Springs property, containing over seven hundred acres, and had the deed executed to plaintiff. . The consideration was $40,000, ten thousand being paid in cash and thirty thousand secured by deed in trust upon the property. The deed is dated 25 January, 1912, and contains full covenants of warranty and seizin.

It is admitted that the boundaries of the land as set out in the deed cover 61 lots or parcels of land, the possession of which has never been had by plaintiff, and that the grantor, the Seven Springs Company, had no title thereto when the deed was executed. A list of the said lots is attached to the complaint as Exhibit B, and they constitute what is known as the town of Whitehall.

Among other defenses set up in the answer, the defendants allege that the lands described in Exhibit B were included in the deed to plaintiff by the mutual mistake of the Goldsboro and Seven Springs Securities Company and the plaintiff, and that it was not intended by either the plaintiff or said grantor that any of the lands described in Exhibit B should be included in the lands conveyed in said deed. Defendants ask a correction of the mistake and reformation of the deed.

The referee finds as facts: "That in the negotiations leading up to the sale of said property, and in the actual conveyance of same to plaintiff, neither the plaintiff nor the defendant Securities Company, or any of its stockholders or directors, considered the Whitehall lots, Nos. 1 to 41 on the Eagle map, as constituting any part of the Seven Springs property, or that they were to be conveyed by the deed; that the plaintiff did not intend to buy nor the defendant Securities Company to sell said lots, and that they were not considered by either party in fixing the purchase price for the property intended to be conveyed and known as the Seven Springs property; that the defendant Securities Company intended to convey only such property as it acquired from its grantor, except such portions thereof as it had conveyed, which were to be excepted in the deed, which property was not understood to embrace any of the lots in question; that the plaintiff intended to buy the Seven Springs property, which he understood to comprise the hotel and springs, some outhouses and barns, the Seven Springs farm and some woods land, including altogether about 715 acres on the south side of Neuse River, the general quality of which the plaintiff knew and which was not understood by him to embrace the lots in question; that the plaintiff has received under his deed substantially what was intended to be bought and sold, and that the lots and small tracts in question were included within the general boundaries in the deed through the mutual mistake of the parties plaintiff and defendant Goldsboro and Seven Springs Securities Company."

This finding is approved by the judge, and in our opinion is supported by the overwhelming weight of evidence; in fact, there is practically nothing in the record tending to prove to the contrary, as plaintiff's own testimony strongly supports defendant's contention.

The lots in controversy embrace the town of Whitehall, which has been incorporated for forty years and which has been known to plain-

tiff, as he admits, as long as he can remember. They embrace the post-office building, the church building, the public school building where plaintiff went to school years ago, practically all of the business houses in the town, and some property which plaintiff himself, since the date of his deed from the Seven Springs Company, has purchased.

The plaintiff's evidence shows that he has never made claim to any part of the Whitehall lots since he purchased the Seven Springs Hotel and farm. He bid at a commissioner's sale in 1912 and endeavored to purchase one of these lots. We copy a few lines from the testimony of plaintiff:

Q. You did not intend to buy that store in this trade, did you? A. I did not consider buying the store at all. When making the deal, I did not know the property lines and did not know the boundary lines of the Seven Springs property.

Q. It was an absolute shock to you to know that store was embraced in the deed? A. I did not know it was in the deed at the time.

Q. It was a great surprise when you found it out? A. When I found it out, I supposed it was included in the exceptions then.

Q. It was a great surprise to find it was not included in the exceptions? A. *Yes, it was a surprise to find it was not included in the exceptions.*

Q. *That is true as to the rest of this property, is it not?* A. *Yes.*

Again he testified:

Q. You knew that neither you nor the other parties contemplated at the time the contract was made buying or selling the United States postoffice there? A. At the time I bought this property I didn't know if the property lines of the Seven Springs property included or excluded the town of Whitehall, so buying Whitehall could not enter my mind.

Q. If it could not enter your mind, you didn't contemplate buying it? A. *After I found that out, I naturally supposed that these various lots were included in the exceptions in the deed.*

Q. You still didn't think you bought it? A. *If I thought it was included in the exceptions I couldn't think I bought it.*

Plaintiff further admits in his evidence that the original contract of sale, in pursuance of which the deed was executed, contains what was intended to be purchased. This contract described the property in general terms as the Seven Springs property. The evidence further shows that plaintiff owns and occupies under his deed what has always been known as the Seven Springs property.

The plaintiff's evidence shows conclusively that he did not contemplate purchasing the town of Whitehall and did not pay a price at all commensurate with its value. The property he received and is in possession of, according to his own evidence, is well worth the $40,000 he

paid for it; in fact, he doubts if he would take $75,000 for it. The town of Whitehall, according to the evidence, is worth $35,000 to $40,000—about as much as the plaintiff paid for the Springs Hotel and farm. It is too plain for further discussion that plaintiff never paid for or contemplated purchasing Whitehall, and made no such claim until it was discovered that the lots comprising it were inadvertently not excepted from his deed.

The relief asked by defendants is the correction of an error in a deed brought about by the mutual mistake of all parties to the deed. This is a recognized head of equitable jurisprudence, and the power is constantly exercised by the courts. It is well settled that where a deed described the land conveyed by metes and bounds and by mutual mistake of the parties covers land which the vendor did not intend to sell, nor the vendee to buy, the mistake will be corrected. *Newsome v. Bufferlow,* 16 N. C., 381; *Pugh v. Britton,* 17 N. C., 34; *Pharr v. Russell,* 42 N. C., 222; *Day v. Day,* 84 N. C., 408; *Warehouse Co. v. Ozment,* 132 N. C., 845; *King v. Hobbs,* 139 N. C., 172; *Sills v. Ford,* 171 N. C., 733; Eaton's Equity, sec. 618.

Mutual mistakes occur generally in the description of property conveyed. To ascertain whether a mistake has been made in describing property in a deed, it is essential to know the intent of the parties, the one in selling and the other in buying, respecting the subject-matter of the conveyance; and if the deed fails to express their intention, there is a mutual mistake, relievable in equity by way of reformation, where the proof is clear, convincing and satisfactory. The subject is fully discussed and many authorities cited in notes to 65 Am. St. Rep., 508, and 117 Am. St. Rep., 244.

The *weight* of the evidence is not before us on this record, but if it were we should be compelled to say that defendants have made out their case upon plaintiff's own testimony.

The court having found that the Whitehall lots were included in the deed by mutual mistake of the parties, there is no breach of the covenants of warranty and seizin. Therefore the authorities cited by the learned counsel for plaintiff have no application. They relate to actions of law for damages for breaches of covenants of seizin and warranty and have no application in cases where the equitable relief of mutual mistake is set up.

The judgment of the Superior Court is
Affirmed.