SALLIE S. STRICKLAND IN HER OWN RIGHT; VELMA STRICKLAND, FOREST STRICKLAND, RUTH STRICKLAND, ALBERTINE STRICK-LAND, PERRY STRICKLAND AND MARGARET STRICKLAND, THE LAST SIX BEING MINORS AND APPEARING HEREIN BY THEIR GUARDIAN, SALLIE S. STRICKLAND, v. R. N. SHEARON, W. H. FULLER AND B. S. ALFORD.

(Filed 7 April, 1926.)

**1. Reformation of Deeds—Equity—Deeds and Conveyances—Mistake.**

In order to reform a deed in equity for mutual mistake of the parties in including lands not intended, without allegation of fraud, it is necessary for the plaintiff to show, not only that she had not intended to convey the *locus in quo*, but that it was not so intended by her grantee.

**2. Same—Draftsman.**

To correct a deed in equity for the mistake of the draftsman, it is necessary for the plaintiff to show that the draftsman had not followed the instructions of the parties in giving the description of the lands conveyed.

**3. Same—Evidence—Mutual Mistake.**

Where the grantor and grantee in a deed have agreed upon the description of timber growing upon lands to be conveyed, and have instructed the draftsman as to the description, equity will not reform the deed solely upon the ground that the grantor had intended to exclude certain of her timber that was included in the description agreed upon.

APPEAL by defendants, W. H. Fuller and B. S. Alford, from *Midyette, J.,* at August Term, 1925, of FRANKLIN. Reversed.

A. P. Strickland died on 15 July, 1920, seized in fee and in the possession of a tract of land, situate in Franklin County, containing 127 acres more or less. He left surviving plaintiff, Sallie S. Strickland, his widow, and her coplaintiffs, his heirs at law, each of whom is a minor. Sallie S. Strickland has been duly appointed and has duly qualified as guardian of said minors.

On 17 March, 1924, plaintiffs herein commenced a special proceeding *ex parte* before the clerk of the Superior Court of Franklin County, by filing a verified petition in which they alleged that they were the owners of a certain tract of land, in said county, containing 135 acres, more or less, being the tract of land conveyed to A. P. Strickland by S. W. Fuller and wife by deed, dated 20 August, 1906, duly recorded in Book 158, at page 48, public registry of Franklin County, less 7⅞ acres subsequently conveyed by A. P. Strickland and wife to Henry Crudup; that upon the said tract of land is situate certain timber, to wit: "All the pine and poplar timber situate upon the above described tract, situate, lying and being east of the branch known as the Fish Pond Branch, also all the pine and poplar timber situate upon said tract lying

north of a hedgerow running from the aforesaid Fish Pond Branch in a southwesterly direction to the Louisburg and Tarboro road, which according to the best information of your petitioners has reached its maturity and at present is in its best salable condition." It is further alleged in said petition that the petitioners have been offered "for all of the above described pine and poplar timber measuring 8 inches or over at the stump, when cut 8 inches above the ground, by Messrs. B. S. Alford and W. H. Fuller, the sum of $850 cash, the said timber to be cut and removed within two years from the date of the delivery of deed" therefor. The petitioners pray that an order be made by the court authorizing and directing the sale of said timber to said B. S. Alford and W. H. Fuller in accordance with their offer and that a commissioner be appointed to convey said timber to the purchasers upon their compliance with their offer.

An affidavit, signed by three residents and freeholders of Franklin County, was filed with said petition, in which each stated that he was familiar with the timber on the lands described in the petition, and was of opinion that $850 was a full and fair price for the same, and that a sale of the said timber at said price would best serve the interests of the infant petitioners.

On 20 March, 1924, an order was made by the clerk of the Superior Court of Franklin County, in which it is recited that the court finds as a fact that a sale of the timber described in the petition will best serve the interests of all the petitioners and that $850, offered for same, is a full and fair price for the said timber. E. H. Malone was appointed commissioner for the purpose of conveying said timber; he was authorized, empowered and directed to execute and deliver to the said B. S. Alford and W. H. Fuller, upon their compliance with the terms of their offer, a deed conveying to them all the standing pine and poplar timber described in said petition. The order and judgment of the clerk was examined and approved by Hon. Henry A. Grady, judge Superior Court, holding the courts of the Seventh Judicial District, on 22 March, 1924.

Thereafter, on 26 March, 1924, E. H. Malone, commissioner, pursuant to the judgment therein, in consideration of the payment to him of the sum of $850, conveyed by deed to B. S. Alford and W. H. Fuller, "all the standing pine and poplar timber measuring 8 inches or over in diameter, at the stump 8 inches from the ground, when cut, lying and being east of the Fish Pond Branch, and all of the standing pine and poplar timber of the above mentioned size and dimensions lying and being north of a hedgerow running from the aforesaid Fish Pond Branch in a southwesterly direction to the Louisburg-Tarboro road, being that certain parcel of land in Franklin County, North Carolina, owned by A. P. Strickland at the time of his death, containing about 135

36—191

acres." Subsequently, defendants, B. S. Alford and W. H. Fuller, conveyed the said timber by deed to their codefendant, R. N. Shearon, who was cutting and removing the same at the date of the commencement of this action, on 24 January, 1925.

Plaintiffs allege in their complaint herein that at the date of the filing of their petition for the sale of the timber described therein, there were situate upon said land "two blocks or parcels of timber that had attained its full growth; one of said blocks consisted of about fifteen acres and growing within the pasture, and the other block consisting of three or four acres, and lying outside the pasture; besides this old and fully grown timber, there is upon said tract of land 35 or 40 acres of thrifty growing pines, with a few poplars, not yet of a size suitable for saw-mill purposes, but which promise to grow into timber of much value. This young growth lies wholly outside of the pasture and on the east end of the plantation."

Plaintiffs allege that defendants, Alford and Fuller, offered for the timber on said two blocks the sum of $850, in cash, and that plaintiff, Sallie S. Strickland, acting in her own right as widow, and as guardian, agreed to report said offer to the court, and to ask for an order for the sale of said timber to said defendants for said sum. It is alleged that in the negotiations for the purchase of said timber, "there was a perfect understanding and agreement between her (the said Sallie S. Strickland) and the defendants, Fuller and Alford, that she was selling and they were buying only the two blocks of old timber which was fully grown; that the language used in the petition, and in the commissioner's deed did not and does not express the real contract and intention of the parties, but was inserted in said petition and deed by the mutual mistake of the parties, or by the mistake of the draftsman."

Plaintiffs pray that the petition, and order of sale in the special proceedings, and the deed of the commissioner be reformed to the end that the timber authorized to be sold in the order pursuant to the petition, and conveyed by the deed, shall be described and designated therein as the old timber on the two blocks, in accordance with the true intention of the parties.

Defendants deny in their answer the allegations as to mutual mistake or mistake of the draftsman; they allege that the timber described in the petition, order and deed is the identical timber for which they offered to pay and did pay the sum of $850.

Issues submitted to the jury were answered as follows:

1. Was the true agreement between Mrs. Sallie S. Strickland and the defendants, Alford and Fuller, that there was being sold only the timbers within the pasture and four or five acres of old timber outside and adjoining the timber within the pasture? Answer: Yes.

2. Was there by mutual mistake of the parties, or the mistake of the draftsman included in the petition, order and commissioner's deed other timbers not intended to be sold or to be included in said petition, order or deed? Answer: Yes.

From judgment upon this verdict, defendants, Alford and Fuller, appealed.

*Ben T. Holden, W. H. Yarborough and E. F. Griffin for plaintiffs.*
*Wm. H. Ruffin and W. M. Person for defendants.*

CONNOR, J. We need not consider or pass upon defendants' first assignment of error based upon their exception to the refusal of the court to submit the issues tendered by them and also to the issues as submitted to the jury. Nor is it necessary to consider or pass upon the numerous exceptions to the overruling of defendants' objections to the admission of testimony. The assignment of error upon which defendants chiefly rely upon their appeal from the judgment rendered by the court below, is based upon their exception to the refusal of the court to allow their motion, first made at the conclusion of plaintiff's evidence and renewed at the close of all the evidence, for judgment as of nonsuit. If there was no evidence of a mutual mistake of the parties or of a mistake of the draftsman with reference to the description of the timber as contained in the petition, order of sale or deed, plaintiffs are not entitled, in any event, to the relief which they seek in this action. They concede that the timber claimed by the defendant, R. N. Shearon, and conveyed to him by his codefendants, W. H. Fuller and B. S. Alford, is included within the description contained in the petition, order of sale and deed; they contend that said description includes timber which it was not the intention of plaintiff to sell or of defendants to purchase; that the error was due to the mutual mistake of the parties or to the mistake of the draftsman of the petition, order of sale and deed. Upon these grounds alone plaintiffs pray for reformation to the end that the timber conveyed by the commissioner's deed may be described therein in accordance with the true intention and agreement of the parties as alleged in the complaint. There is no allegation or contention that the erroneous description was due to or caused by any fraud on the part of the defendants.

The evidence tends to show that the land on which the timber was located descended to the heirs at law of A. P. Strickland, deceased, subject to the right of dower of his widow; that the dower had not been allotted to the widow and that there had been no partition among the heirs at law, all of whom are minors residing with the widow, who is their mother and guardian. Early in 1924 there were negotiations be-

tween the Messrs. White and Mrs. Strickland for the purchase by them of certain timber located on said land. This timber, was described by Mrs. Strickland in her testimony as the "old timber, situate partly on the north of the hedgerow beginning at the north of Fish Pond Branch and running out to the Louisburg-Tarboro road and partly east of the Fish Pond Branch lying up and down the branch. All of this timber was in the pasture except that on a few acres on the lower end of the branch." These negotiations did not result in an agreement by Mrs. Strickland to sell to the Whites because defendants offered a larger sum for the timber than that offered by them. In the negotiations with defendants, Mrs. Strickland testified that she told them "the best she could what timber she had shown Mr. White." Defendants looked over the timber in which they were interested and told Mrs. Strickland that they wanted the same timber which the Whites wanted. Mrs. Strickland did not go upon the land with defendants at the time they examined the timber; nor did she show them the timber which was the subject of her negotiations with the Whites; or the boundaries of the land on which the timber was located.

After the purchase price of the timber had been agreed upon by Mrs. Strickland and defendants, Mrs. Strickland went with the defendants to the office of her attorney, Mr. E. H. Malone, in Louisburg, to consult with him as to the conveyance of the timber to defendants. As the result of this consultation, Mr. Malone prepared the papers in the special proceedings instituted by plaintiffs for the sale of timber. The description of the timber to be sold and conveyed as contained in the petition was given to Mr. Malone by Mrs. Strickland and defendants during a conference in his office at which all three were present. After Mr. Malone had prepared the petition it was read by him to Mrs. Strickland, who thereupon signed and verified it. Mr. Malone also prepared an affidavit to be signed by three freeholders; this affidavit was delivered to Mrs. Strickland and was subsequently signed by three residents and freeholders of Franklin County at her request. The affidavit recites that "we are familiar with the timber described in the petition herein attached." The description of the timber in the order of sale and in the deed of the commissioner conveying same to defendants, is identical with that in the petition.

Mrs. Strickland testified as follows: "I was absent from the office for one hour. Mr. Malone fixed up the paper while I was gone. When I got back the deed was fixed and the way I understood it was that I included the timber on the north side of the hedgerow from the Fish Pond Branch and running out to the Louisburg-Tarboro road and the old timber east of the Fish Pond Branch. This piece of timber I thought I had sold was in the cow pasture and east of the Fish Pond Branch. I

had no idea it included any but the old timber east of the Fish Pond Branch. I have never contended that I only sold the timber inside the pasture."

Mr. Malone testified as follows: "I could not tell to save my life which of the three stated the terms of the contract, but it was stated in the presence of all three and all three acquiesced in the terms. When I came to draw the petition and they were trying to describe the timber, I advised a survey as I knew nothing about the timber. They wanted to avoid any expense that they could. I told them that if they wanted to sell all the timber on one side or another to a given line between two points and could give me the boundaries, I could do without a survey. I dictated the description and all agreed that it was a proper and accurate description of the property. The description was read and it was agreed that that was what they wanted to do. I read the description after it was embodied in the petition to Mrs. Strickland but I could not say whether or not she understood it. I consider Mrs. Strickland of more than average intelligence. She has shown considerable ability to take care of business. She is a very satisfactory client and a perfect lady."

J. E. Malone, Jr., testified that he is an attorney at law, and a member of the firm of White & Malone. He was present at the conference between Mrs. Strickland and defendants, at the time of the preparation of the papers in the special proceeding for the sale of the timber. "When we got to the description, we suggested that it would be advisable to have the timber surveyed. They did not want to have the survey, if it was possible to get along without it. We made some rough drawings, and dismissed that phase of the matter for a half-hour. My brother, E. H. Malone, dictated the description. I took it down in shorthand. After he dictated he asked what each thought of it. They all agreed or acquiesced that that was what they wanted in the deed. Thereupon, I finished drawing the papers for the proceeding. All three of the parties helped to arrive at the description. It was read in the presence of all three and they assented to it. Mrs. Strickland seemed to be entirely satisfied with the description."

Both the defendants testified that after agreeing with Mrs. Strickland upon the timber which they were to purchase and upon the price which they were to pay, at her request, they went with her to the office of her attorney, Mr. Malone. After stating to Mr. Malone the terms of the bargain, Mrs. Strickland and defendants agreed upon the description of the timber to be embodied in the papers. The description as contained in the petition, order of sale, and deed is the same as they agreed upon; the timber described in the deed is the identical timber which Mrs. Strickland agreed to sell and which they agreed to buy.

There is no evidence set out in the case on appeal in this record from which the jury could find that Mr. Malone, the draftsman who prepared the petition, order of sale, and deed made any mistake in describing therein the timber which he was informed by both Mrs. Strickland and the defendants, plaintiffs wished to sell and defendants had offered to buy. This description was inserted in the petition by him under instructions of all three interested parties, after a full discussion, extending through a half-hour, at a conference in his office; it was read to and approved by them as a true and accurate description of the timber, which was the subject of their negotiations. Mrs. Strickland signed and verified the petition, after it had been read to her by Mr. Malone. If the timber described in the petition, order of sale, and deed is not the timber which Mrs. Strickland, acting for the plaintiffs, intended to sell and defendants intended to buy, this cannot be attributed to any mistake made by Mr. Malone, the draftsman. The principle that a court of equity will order a written instrument, purporting to contain the agreement of the parties thereto, reformed, if the instrument, as written, is not in accord, as to some material matter, with the true intention of the parties, because of a mistake of the draftsman, cannot be applied upon this record. The principle is well established, but obviously cannot be applied in this action unless a mistake was made by the draftsman with the result that the instrument as drawn by him does not express the true agreement or intention of the parties to be bound thereby. *Maxwell v. Bank,* 175 N. C., 180; *Sills v. Ford,* 171 N. C., 733; *Shook v. Love,* 170 N. C., 99.

The evidence relied upon by plaintiffs to support their allegation of mutual mistake of both parties is not sufficient to establish more than that Mrs. Strickland understood, when the description was given by her or by defendants, in her presence, to her attorney to be inserted by him in the petition as the correct description of the timber which was the subject-matter of the agreement, that it covered only the old timber on the two blocks, as described by her in her testimony; there is no evidence that the defendants understood that the description given to the attorney in their presence and acquiesced in by both Mrs. Strickland and themselves, was limited as contended by plaintiffs. When parties to a contract have expressed their agreement in terms that are explicit and plain of meaning—that is, when their minds have met on the terms of the contract—it may not be revoked or altered by reason of the mistake of one of the parties alone, resting wholly in his own mind, there being no fraud or misrepresentation by the other. *Lumber Co. v. Boushall,* 168 N. C., 501.

We must hold that it was error to refuse defendants' motion for judgment as of nonsuit. Conceding, for the purpose of disposing of this ap-

peal, that if the timber for the sale of which the special proceeding was instituted, was incorrectly or inaccurately described in the petition by reason of the mutual mistake of the petitioners and of the proposed purchaser, the said petition, order of sale and deed could be reformed in an independent action brought by the plaintiffs against the grantees in the deed who were the proposed purchasers, plaintiffs cannot recover in this action for that the evidence offered by them is not sufficient to sustain their allegation. We do not therefore consider the assignment of error presenting defendants' contention that in no event could plaintiffs have the relief sought in this action.

It may be noted that defendant, Shearon, to whom his codefendants have conveyed the timber, filed no answer to the complaint herein. Judgment by default was rendered against him. . He has not appealed. The judgment rendered upon the verdict in favor of plaintiffs and against defendants, W. H. Fuller and B. S. Alford, must, in accordance with this opinion, be

Reversed.